Robert Beatty-Walters, WSB #27767
rbw@beattywalterslaw.com
Mary L. Pool, WSB #29020
mlp@beattywalterslaw.com
**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
P: (503) 473-8088
F: (503) 473-8089

## IN THE UNITED STATE DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

## SPOKANE

| | |
|---|---|
| TODD BATTEN, an individual; ROBERT DYER, an individual; REGGIE MORRIS, an individual; and ANNA TESTER, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> PROVIDENCE ST. JOSEPH HEALTH; PROVIDENCE HEALTH & SERVICES; PROVIDENCE HEALTH AND SERVICES –WASHINGTON d/b/a PROVIDENCE; PROVIDENCE ST. MARY MEDICAL CENTER; and PROVIDENCE MEDICAL GROUP d/b/a PROVIDENCE MEDICAL GROUP SOUTHEAST WASHINGTON NEUROSURGERY, a/k/a PMG NEUROSCIENCE INSTITUTE, WALLA WALLA a/k/a NEUROSCIENCE INSTITUTE d/b/a PROVIDENCE, <br><br> Defendants. | Case No. <br><br> COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE AND CORPORATE NEGLIGENCE) |

COMES NOW Plaintiffs, by and through their attorneys of record,

ROBERT BEATTY-WALTERS and MARY L. POOL, and for their Complaint

hereby allege as follows:

# I. INTRODUCTION

1.1   This is a medical malpractice/corporate negligence action for damages caused by unnecessary and negligent surgeries performed by Defendants' agents and employees, including JASON A. DREYER, D.O., ("Dr. Dreyer") and DANIEL P. ELSKENS, M.D., ("Dr. Elskens") for the profit of, and on behalf of Defendants PROVIDENCE ST. JOSEPH HEALTH; PROVIDENCE HEALTH & SERVICES; PROVIDENCE HEALTH AND SERVICES –WASHINGTON d/b/a PROVIDENCE; PROVIDENCE ST. MARY MEDICAL CENTER; and PROVIDENCE MEDICAL GROUP d/b/a PROVIDENCE MEDICAL GROUP SOUTHEAST WASHINGTON NEUROSURGERY, a/k/a PMG NEUROSCIENCE INSTITUTE, WALLA WALLA a/k/a NEUROSCIENCE INSTITUTE d/b/a PROVIDENCE (hereinafter defendant "Providence").

1.2   Defendant Providence owns and operates St. Mary Medical Center (SMMC), a hospital located in Walla Walla, Washington.  SMMC has multiple departments, one of which is the neurosurgery department.

1.3   Between July 1, 2013 and November 13, 2018 (hereinafter the relevant time period) Dr. Dreyer and Dr. Elskens were neurosurgeons employed by Providence at SMMC.  Dr. Dreyer was a neurosurgeon employed by Providence at SMMC during the entire relevant time period, while Dr. Elskens was a neurosurgeon employed by Providence at SMMC between November 2015 and May 2017.

1.4   During the relevant time period, SMMC's neurosurgery department, including Dr. Dreyer and Dr. Elskens, performed a high volume of multi-level spinal surgeries.  SMMC staff neurosurgeons, including Dr. Dreyer and Dr. Elskens, were paid compensation based on a personal productivity metric known as Work Relative Value Units (wRVUs), which were calculated based on a

COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE AND CORPORATE NEGLIGENCE)
Page 2 of 24

1    value assigned under the Medicare Physician Fee Schedule to the services

2    personally furnished by the individual neurosurgeon.  SMMC neurosurgeons,

3    including Dr. Dreyer and Dr. Elskens, were paid compensation for each wRVU

4    that they generated, with no cap on the wRVU-based compensation that could be

5    earned.  In this manner, the greater the number of procedures of higher complexity

6    that the neurosurgeon performed, the greater the compensation the neurosurgeon

7    received.

8        1.5    Between 2014 and 2018, Dr. Dreyer's personal productivity, as

9    measured by wRVUs, exceeded the 90th percentile of physician market survey data,

10    and he was among the top producing neurosurgeons in the Providence system.

11    Based on this productivity, between 2014 and 2017, Dr. Dreyer earned between

12    $2.5 million and $2.9 million annually.  On information and belief, during the

13    relevant time period, Dr. Elskens' personal productivity, as measured by wRVUs,

14    exceeded the 90th percentile of physician market survey data.

15        1.6    At various times during the relevant time period, Providence received

16    both positive and negative information about Dr. Dreyer and Dr. Elskens.

17    However, Providence personnel also had and articulated concerns regarding the

18    quality of care provided by Dr. Dreyer and Dr. Elskens, as well as the medical

19    necessity of surgical procedures performed by Dr. Dreyer.  These included

20    concerns that Dr. Dreyer: (1) completed medical documentation with falsified,

21    exaggerated, and/or inaccurate diagnoses that did not accurately reflect the

22    patient's true medical condition in order to obtain reimbursement for surgical

23    procedures performed by Dr. Dreyer; (2) performed certain surgical procedures

24    that did not meet the medical necessity guidelines and requirements for

25    reimbursement set forth by Medicare and other government and private health

26    insurance programs; (3) "over-operated", i.e., performed a surgery of greater

COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE
AND CORPORATE NEGLIGENCE)
Page 3 of 24

1    complexity and scope than was indicated and medically appropriate; and (4)

2    jeopardized patient safety by attempting to perform an excessive number of overly

3    complex surgeries.

4        1.7    These concerns also included concerns that Dr. Dreyer and

5    Dr. Elskens: (1) endangered the safety of SMMC patients; (2) created an excessive

6    level of complications, negative outcomes, and necessary additional operations as a

7    result of their surgeries; (3) performed surgical procedures on certain candidates

8    who were not appropriate candidates for surgery given their medical histories,

9    conditions, and contraindications; and (4) failed to adequately and accurately

10    document certain procedures, diagnoses, and complications.

11        1.8    On February 23, 2017, as a result of concerns articulated by SMMC

12    medical staff, Providence placed Dr. Elskens on administrative leave and, shortly

13    thereafter, initiated an independent analysis of certain concerns articulated as to Dr.

14    Elskens with regard to certain specific patients.

15        1.9    On May 8, 2017, at a time in which Dr. Elskens was still under

16    investigation by professional review bodies under the control of Providence

17    relating to possible incompetence or improper professional conduct, and which

18    adversely affected Dr. Elskens' clinical privileges to perform surgery, Providence

19    accepted Dr. Elskens' resignation.  Providence did not report Dr. Elskens to the

20    National Practitioner Data Bank, which is a violation of 42 U.S.C. § 11133(a)(1),

21    or report Dr. Elskens to the Washington State Department of Health.

22        1.10    On May 22, 2018, as a result of concerns articulated by SMMC

23    medical staff, Providence placed Dr. Dreyer on administrative leave and initiated

24    an independent analysis of certain concerns articulated as to Dr. Dreyer with regard

25    to certain specific patients.

26        1.11    On November 13, 2018, at a time in which Dr. Dreyer was still under

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1    investigation by Providence relating to possible incompetence or improper

2    professional conduct, Dr. Dreyer submitted his letter of resignation to Providence,

3    which Providence accepted.  Providence did not report Dr. Dreyer to the National

4    Practitioner Data Bank, which is a violation of 42 U.S.C. § 11133(a)(1), or report

5    Dr. Dreyer to the Washington State Department of Health.

6                                    **II.  PARTIES**

7          2.1.    Plaintiffs TODD BATTEN, ROBERT DYER, REGGIE MORRIS,

8    and ANNA TESTER, re-allege paragraphs 1.1 to 1.11 as though fully set forth

9    herein.

10         2.2    Plaintiff, TODD BATTEN, was at all times relevant to this cause of

11   action over the age of majority and residing in Elgin, Oregon.

12         2.3    Plaintiff, ROBERT DYER, was at all times relevant to this cause of

13   action over the age of majority and residing in Elgin, Oregon.

14         2.4    Plaintiff, REGGIE MORRIS, was at all times relevant to this cause of

15   action over the age of majority and residing in Pendleton, Oregon.

16         2.5    Plaintiff, ANNA TESTER, was at all times relevant to this cause of

17   action over the age of majority and residing in Pilot Rock, Oregon.

18         2.6    Defendants PROVIDENCE ST. JOSEPH HEALTH; PROVIDENCE

19   HEALTH & SERVICES; PROVIDENCE HEALTH AND SERVICES

20   –WASHINGTON d/b/a PROVIDENCE; PROVIDENCE ST. MARY MEDICAL

21   CENTER; and PROVIDENCE MEDICAL GROUP d/b/a PROVIDENCE

22   MEDICAL GROUP SOUTHEAST WASHINGTON NEUROSURGERY, a/k/a

23   PMG NEUROSCIENCE INSTITUTE, WALLA WALLA a/k/a NEUROSCIENCE

24   INSTITUTE d/b/a PROVIDENCE, (hereinafter "PROVIDENCE") are

25   Washington State corporations located in Renton, Washington, and Walla Walla,

26   Washington, and regularly conducting business in Walla Walla County,

COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE
AND CORPORATE NEGLIGENCE)
Page 5 of 24

1    Washington.

2        2.7     PROVIDENCE ST. JOSEPH HEALTH and PROVIDENCE

3    HEALTH & SERVICES – WASHINGTON did business as PROVIDENCE ST.

4    MARY MEDICAL CENTER  and PROVIDENCE MEDICAL GROUP

5    SOUTHEAST WASHINGTON NEUROSURGERY.  Defendant PROVIDENCE

6    HEALTH & SERVICES –  WASHINGTON, d/b/a PROVIDENCE ST. MARY

7    MEDICAL CENTER, and d/b/a PROVIDENCE MEDICAL GROUP

8    SOUTHEAST WASHINGTON NEUROSURGERY are referred to hereinafter

9    collectively and individually as "Defendant PROVIDENCE."

10        2.8     JASON A. DREYER, D.O. (hereinafter "Dr. DREYER"), was at all

11    times material, an osteopathic physician and surgeon licensed to practice in the

12    state of Washington, specializing in neurosurgery and engaged in the provision of

13    medical and surgical care to Plaintiffs TODD BATTEN, ROBERT DYER, and

14    REGGIE MORRIS, as an agent and/or employee of Defendant PROVIDENCE.  At

15    all times relevant hereto, Dr, DREYER held himself out to be a medical and

16    surgical care provider whose services were offered to the public for compensation.

17    All acts or omissions committed by Dr. DREYER were done in the course and

18    scope of his employment with, on behalf of, and for the benefit of, his employer,

19    defendant Providence.

20        2.9     DANIEL P. ELSKENS, M.D. (hereinafter "Dr. ELSKENS"), was

21    during the relevant time period, a physician and surgeon licensed to practice in the

22    state of Washington, specializing in neurosurgery and engaged in the provision of

23    medical and surgical care to Plaintiff ANNA TESTER, as an agent and/or

24    employee of Defendant PROVIDENCE.  At all times relevant hereto, Defendant

25    Providence held Dr. ELSKENS out to be a medical and surgical care provider

26    whose services were offered to the public for compensation.  All acts or omissions

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1    committed by Dr. ELSKENS were done in the course and scope of his employment

2    with, on behalf of, and for the benefit of, his employer, defendant Providence.

3                              **III.  JURISDICTION/VENUE**

4         3.1.    Plaintiffs TODD BATTEN, ROBERT DYER, REGGIE MORRIS,

5    and ANNA TESTER re-allege paragraphs 1.1 through 2.9 as though fully set forth

6    herein.

7         3.2    This court has jurisdiction over Plaintiffs' claims pursuant to 28

8    U.S.C. § 1332, because there is complete diversity of citizenship between the

9    parties, and the amount in controversy exceeds $75,000.00, exclusive of interest

10    and costs.

11        3.3.    Venue is proper in this court pursuant to 28 U.S.C. § 1391 because a

12    substantial part of the events and omissions giving rise to the claims alleged in the

13    Complaint occurred in the Eastern District of Washington, specifically the Spokane

14    Division; and, one or more of the Defendants resides in the Eastern District of

15    Washington Court.

16                                  **IV.  FACTS**

17        4.1    Plaintiffs TODD BATTEN, ROBERT DYER, REGGIE MORRIS,

18    and ANNA TESTER re-allege paragraphs 1.1 through 3.3 as though fully set forth

19    herein.

20        4.2    Plaintiff TODD BATTEN

21             4.2.1  On or about June 15, 2015, plaintiff TODD BATTEN sought

22    consultation with Dr. Dreyer.  Dr. Dreyer falsely interpreted a December 4, 2014,

23    MRI of Plaintiff TODD BATTEN'S cervical spine to include a "dynamic

24    instability with spondylolisthesis C5-6," and "spondylosis C4-5, C6-7" with

25    "resulting foraminal stenosis at those levels."  In addition, Dr. Dreyer falsely

26    asserted Plaintiff TODD BATTEN suffered from "arm symptoms down the left

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1  side." Dr. Dreyer recommended a multi-level anterior cervical disc fusion (ACDF)

2  from C4-7.  On July 15, 2015, Plaintiff TODD BATTEN underwent an anterior

3  cervical disk fusion (ACDF) surgery at the C4-7 levels, with plating, which was

4  not medically indicated, and subjected Plaintiff TODD BATTEN to unnecessary

5  risk from surgery, at PROVIDENCE ST. MARY MEDICAL CENTER in Walla

6  Walla, Washington, which was reported and billed to Plaintiff and his health

7  insurance companies to include the following:

8           1.    C4-5, C5-6, C6-7 anterior interbody diskectomy with
9                 decompression of the spinal court and osteophytectomy;

10          2.    C4-5, C5-6, C6-7 anterior interbody arthrodesis;

11          3.    C4-5, C5-6, C6-7 insertion of interbody allograft;

12          4.    C4-C7 anterior instrumentation;

13          5.    Microsurgical techniques;

14          6.    Fluroscopic guidance for localization and
15                instrumentation.

16          4.2.2  As a result of this unnecessary surgery performed by Dr.

17  Dreyer, plaintiff TODD BATTEN suffered from adjacent segment disease in his

18  cervical spine at C3, in addition to other symptoms, including increasing pain, and

19  loss of range of motion.  Dr. Dreyer then recommended additional unnecessary

20  surgery at C3, in addition to a revision of the prior unnecessary surgery.

21          4.2.3  On or about April 18, 2018, Dr. Dreyer performed a second

22  unnecessary and not medically indicated procedure on Plaintiff TODD BATTEN,

23  including the following:

24          1.    C3-4 anterior interbody diskectomy with decompression
25                of the spinal cord and osteophytectomy;

26          2.    C6-7 revision anterior interbody diskectomy with

COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE
AND CORPORATE NEGLIGENCE)
Page 8 of 24

1       decompression of the spinal cord and osteophytectomy;

2       3.      C3-4, C6-7 anterior interbody arthrodesis;

3       4.      C3-4, C6-7 insertion of interbody PEEK cage;

4       5.      C3-C4 anterior instrumentation;

5       6.      C6-C7 separate anterior instrumentation;

6       7.      Microsurgical techniques;

7       8.      Fluoroscopic guidance for localization and

8               instrumentation;

9       9.      Hardware removal at C5 without reinsertion.

10      4.2.4  Each of these procedures were unnecessary and not medically

11      indicated, and undertaken to maximize reimbursement and profit to both

12      Providence and Dr. Dreyer personally.

13      4.2.5  As a result of these unnecessary and not medically indicated

14      surgeries, Plaintiff TODD BATTEN now suffers from permanent injury in his

15      cervical spine, causing pain, loss of mobility, and other harms that he would not

16      have suffered but for Providence and Dr. Dreyer's negligence in performing these

17      unnecessary surgical procedures.

18      4.2.6  Plaintiff TODD BATTEN learned of the fact that Providence

19      had allowed Dr. Dreyer to perform unnecessary surgeries on or about April 12,

20      2022, and could not reasonably have discovered Providence and Dr. Dreyer's

21      negligence in performing unnecessary surgeries upon his cervical spine before

22      April 12, 2022,when he learned of defendant Providence's settlement with the US

23      Attorney for the Eastern District of Washington on Federal False Claims Act

24      violations.

25      4.3    Plaintiff ROBERT DYER

26      4.3.1  On or about August 22, 2017, Plaintiff ROBERT DYER sought

Law Office of Robert Beatty-Walters
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1  consultation with Providence providers, including Physician Assistant Derek

2  Sucharda.  At that time Mr. Sucarda interpreted a June, 2017, MRI as showing

3  mild to moderate foraminal stenosis at L3-L4, right mild to moderate foraminal

4  stenosis at L4-L5 and L5-S1.  Subsequent to this visit, on November 8, 2017,

5  February 28, 2018, and March 13, 2018, Dr. Dreyer falsely described the same

6  MRI of the lumbar spine from June of 2017 to demonstrate spondylosis L3-4 and

7  L5-S1,  spondylolisthesis L4-5, significant facet hypertrophy L3-4, L4-5, and

8  L5-S1, moderate lateral recess stenosis at L3-4, moderate central and *severe*

9  lateral recess stenosis at L4-5, and *severe* right foraminal stenosis at L5-S1.  Dr.

10  Dreyer recommended a three level fusion of Plaintiff DYER's lumbar spine from

11  L3-S1, using a lateral and posterior approaches.  This recommendation was made

12  even though the pathology present on Plaintiff ROBERT DYER'S MRI studies,

13  nor his clinical signs and symptoms, showed the surgery to be medically indicated.

14      4.3.2  On or about March 13, 2018, Plaintiff ROBERT DYER

15  underwent an unnecessary and not medically indicated three-level fusion on his

16  lumbar spine, and subjected Plaintiff ROBERT DYER to unnecessary risk from

17  surgery, at PROVIDENCE ST. MARY MEDICAL CENTER in Walla Walla,

18  Washington, which was reported and billed to Plaintiff and his health insurance

19  companies to include the following:

20          1.    Anterior lumbar interbody arthrodesis, L3-4, L4-5 -

21                 lateral approach;

22          2.    Postereolateral arthrodesis, L3-4, L4-5;

23          3.    Combined posterior interbody and posterolateral

24                 arthrodesis, L5-S1;

25          4.    PEEK interbody L3-4, L4-5, L5-S1;

26          5.    Posterior spinal instrumentation L3-S1;

COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE
AND CORPORATE NEGLIGENCE)
Page 10 of 24

1            6.     Laminectomies L4, L5, S1 for the purpose of

2                    decompression;

3            7.     Use of allograft;

4            8.     Use of microscope for microsurgical techniques;

5            9.     Co-registration with navigation system for spinal

6                    navigation;

7          4.3.3   Each of these procedures were unnecessary and not medically

8 indicated, and were undertaken to maximize reimbursement and profit to both

9 Providence and Dr. Dreyer personally.

10         4.3.4   As a result of these unnecessary and not medically indicated

11 surgeries, Plaintiff ROBERT DYER now suffers from permanent injury in his

12 lumbar spine, causing pain, loss of mobility, and other harms, including an

13 abdominal hernia, that he would not have suffered but for Providence and Dr.

14 Dreyer's negligence in performing these unnecessary surgical procedures.

15         4.3.5   Plaintiff ROBERT DYER learned of the fact that Providence

16 had allowed Dr. Dreyer to perform unnecessary surgeries on or about May 21,

17 2022, and could not reasonably have discovered Providence and Dr. Dreyer's

18 negligence in performing unnecessary surgeries upon his lumbar spine before May

19 21, 2022, when he learned of defendant Providence's settlement with the US

20 Attorney for the Eastern District of Washington on Federal False Claims Act

21 violations.

22    4.4    Plaintiff REGGIE MORRIS

23         4.4.1   Plaintiff REGGIE MORRIS was referred to Dr. Dreyer on or

24 about June 23, 2016, for pain in his mid-back.  MRI studies done September 12,

25 2016, showed a previously demonstrated mild disc bulge at T6-7 had "nearly

26 disappeared."  A CT scan done November 8, 2016, showed no disc bulge or

COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE
AND CORPORATE NEGLIGENCE)
Page 11 of 24

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1   protrusion seen throughout the thoracic spine and no central canal stenosis.

2   Nevertheless, Dr. Dreyer falsely asserted these films showed thoracic spondylosis

3   and stenosis at T6-7, and a disc bulge and deformation of the spinal cord on the

4   right at T6-7 and recommended fusion of the thoracic spine at T6-7.

5          4.4.2  On or about January 17, 2017, Plaintiff REGGIE MORRIS

6   underwent unnecessary and extensive surgery performed by Dr. Dreyer on his

7   thoracic spine, and subjected Plaintiff REGGIE MORRIS to unnecessary risk from

8   surgery, at PROVIDENCE ST. MARY MEDICAL CENTER in Walla Walla,

9   Washington, which was reported and billed to Plaintiff and his health insurance

10   companies to include the following:

11           1.    Combined posterior interbody and posterolateral
12                  arthrodesis T6-7;

13           2.    Posterior spinal instrumentation T6-7;

14           3.    PEEK Interbody at T6-7;

15           4.    Laminectomy at T6 and T7 for purposes of
16                  decompression;

17           5.    Use of intraoperative microscope for microdissection;

18           6.    Co-registration for the purposes of spinal navigation.

19          4.4.3  Following this surgery, Plaintiff REGGIE MORRIS began to

20   experience stabbing and shooting pain, thoracic pain, radiculopathy, cramps, and

21   spasms.  The area became infected and, in 2018, another surgery was required to

22   remove the spinal pedicle screw instrumentation and other hardware.  The surgeon

23   performing the removal determined that it was not safe or feasible to remove the

24   interbody cage and it remains in Mr. Morris's thoracic spine.

25          4.4.4  In 2022, a spinal cord stimulator was implanted, but only

26   provided minimal relief from the pain.  Mr. Morris continues to need opiate pain

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1 medication to get through each day.  His life has become focused on seeking relief

2 from the pain.  The pain makes most activities difficult, and some impossible.  As

3 time has passed it is worsening, and almost constant.  As a result, he will require

4 pain medications and management for the rest of his life.

5    4.4.5  In April 2021, a family member gave Plaintiff REGGIE

6 MORRIS a news article about the fraud by Dr. Dreyer and Providence, and Reggie

7 Morris first began to suspect that his thoracic spine surgery that has caused so

8 much harm, was unnecessary.  He later learned about Providence's role in

9 incentivizing Dr. Dreyer to perform extensive and unnecessary spine surgeries for

10 financial gain that benefitted Providence and Dr. Dreyer, while causing him and

11 others in the community significant harm.

12    4.4.6   Plaintiff REGGIE MORRIS learned in or about April of 2021

13 of the fact that Providence had allowed Dr. Dreyer to perform an unnecessary

14 surgery, and could not reasonably have discovered Providence and Dr. Dreyer's

15 negligence in performing unnecessary surgeries upon his thoracic spine before

16 April of 2021, when he learned though news reports of defendant Providence's and

17 Dr. Dreyer's alleged fraud in another case.

18    4.4.7  On or about February 22, 2022, pursuant to RCW 7.70.110,

19 Plaintiff REGGIE MORRIS, served a Good Faith Request for Mediation on

20 defendant Providence and Dr. Dreyer.  On November 10, 2022, Plaintiff REGGIE

21 MORRIS, defendant Providence, and Dr. Dreyer, entered into a tolling agreement

22 extending the statute of limitations tolled by the Good Faith Request for Mediation

23 until May 22, 2023, to allow time for mediation.  A good faith mediation was held

24 on March 28, 2023, which was unsuccessful.

25   4.5 Plaintiff ANNA TESTER

26    4.5.1  On or about November 29, 2016, Plaintiff Anna Tester sought

COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE
AND CORPORATE NEGLIGENCE)
Page 13 of 24

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1  consultation with Dr. Daniel Elskens at defendant Providence clinic for pain in her

2  lumbar spine.  Dr. Elskens recommended a four level fusion including a lateral

3  anterior interbody fusion with PEEK cages at L2-3, and L3-4; and transforamenal

4  interbody fusion with PEEK cages at L2-3, L3-4, L4-5, and L5-S1.  The

5  procedures at L2-3, and L3-4 were not medically indicated or necessary.

6         4.5.2  On or about December 30, 2016, Plaintiff ANNA TESTER

7  underwent a L2-3, L3-4, L4-5, lateral anterior interbody fusion with posterior

8  instrumentation, L5-S1 transforaminal lumbar interbody fusion on her lumbar

9  spine, and subjected Plaintiff ANNA TESTER to unnecessary risk from surgery, at

10  PROVIDENCE ST. MARY MEDICAL CENTER in Walla Walla, Washington,

11  performed by Dr. Elskens, which was reported and billed to Plaintiff and her health

12  insurance companies to include the following:

13          1.    L2-3, L3-4 lateral anterior interbody fusion with PEEK

14              cages;

15          2.    Posterior on lay facet fusions L2-3, 3-4, 4-5, and L5-S1;

16          3.    L4-5 and L5-S1 transforamenal interbody fusion with

17              PEEK cages;

18          4.    posterior instrumentation L2-S1 with Stealth guidance

19         4.5.3  The procedures performed at L2-3 and L3-4, were unnecessary

20  and not medically indicated, and undertaken to maximize reimbursement and profit

21  to both Providence and Dr. Elskens personally.

22         4.5.4 As a result of these unnecessary and not medically indicated

23  surgeries, Plaintiff ANNA TESTER now suffers from permanent injury in her

24  lumbar spine, causing pain, loss of mobility, and other harms that he would not

25  have suffered but for Providence and Dr. Elskens' negligence in performing these

26  unnecessary surgical procedures.

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1        4.5.5  Plaintiff ANNA TESTER learned of the fact that Providence

2  had allowed Dr. Elskens to perform unnecessary surgeries on or about April 12,

3  2022, and could not reasonably have discovered Providence and Dr. Elskens'

4  negligence in performing unnecessary surgeries upon her lumbar spine before

5  April 12, 2022, when she learned of defendant Providence's settlement with the US

6  Attorney for the Eastern District of Washington on Federal False Claims Act

7  violations.

8                          **V.**

9        **CAUSE OF ACTION FOR NEGLIGENCE VS
DEFENDANT PROVIDENCE**

10

11      5.1    Plaintiffs TODD BATTEN, ROBERT DYER, REGGIE MORRIS,

12  and ANNA TESTER  re-allege paragraphs 1.1 through 4.5.5 as though fully set

13  forth herein.

14      5.2    Defendant PROVIDENCE owed Plaintiffs TODD BATTEN,

15  ROBERT DYER, REGGIE MORRIS, and ANNA TESTER a non-delegable duty

16  of care to assure that they received safe and appropriate surgical care, performed in

17  a safe and reasonable manner, and to adopt written policies and procedures specific

18  to surgical services, and to provide for medical staff who were qualified, trained,

19  and supervised subject to the medical direction of Defendant PROVIDENCE.

20      5.3    Defendant PROVIDENCE had a duty to select and retain only

21  competent physicians and surgeons; a duty to formulate, adopt and enforce

22  adequate rules and policies to ensure quality care for their patients, including a

23  duty to maintain a coordinated quality improvement program for the improvement

24  of the quality of health care services rendered to patients and the identification and

25  prevention of medical malpractice; a duty to supervise its members and employees

26  to assure that they adhere to the relevant standard of patient care, including a duty

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1    to create quality improvement committees to monitor and review the performance

2    of their medical staff; and, a duty to maintain and continuously collect information

3    concerning the hospital's experience with negative health care outcomes and

4    incidents injurious to patients as they relate to specific physicians and surgeons.

5        5.4   Defendant PROVIDENCE breached the afore listed duties by, without

6            limitation:

7            5.4.1   Failing to formulate, adopt and enforce adequate rules, policies;

8                and/or adopting policing or practices which in themselves

9                created an unnecessary and unreasonable risk of harm to

10               Plaintiffs TODD BATTEN, ROBERT DYER, REGGIE

11               MORRIS, and ANNA TESTER;

12           5.4.2   Failing to ensure proper oversight of its employees or agents to

13               assure that Plaintiffs TODD BATTEN, ROBERT DYER,

14               REGGIE MORRIS, and ANNA TESTER'S care was

15               appropriate and within the relevant standard of care;

16           5.4.3   Defendant PROVIDENCE, negligently failed to monitor,

17               proctor, or control, the surgical practice of Dr. DREYER and

18               Dr. ELSKENS when Defendant PROVIDENCE knew or

19               should have known that such monitoring, proctoring, or control

20               was necessary because of results of prior surgical cases of Dr.

21               DREYER and Dr. ELSKENS;

22           5.4.4   Defendant PROVIDENCE, negligently failed to restrict or

23               terminate Dr. DREYER'S surgical privileges and/or his

24               employment prior to January 19, 2017, and negligently failed to

25               restrict or terminate Dr. ELSKENS' surgical privileges and/or

26               his employment prior to December 30, 2016, when Defendant

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1       PROVIDENCE knew or should have known that Dr. DREYER

2       and Dr. ELSKENS had performed other medically unnecessary

3       and excessive neurosurgical procedures including unnecessary

4       spinal fusions, and used unnecessary instrumentation and

5       medical hardware for the purpose earning excessive profits;

6   5.4.5   In failing to restrict or terminate Dr. DREYER'S surgical

7       privileges and/or his employment prior to January 19, 2017, and

8       negligently failed to restrict or terminate Dr. ELSKENS'

9       surgical privileges and/or his employment prior to December

10      30, 2016, when Defendant PROVIDENCE knew or should have

11      known that Dr. DREYER and Dr. ELSKENS had caused other

12      patient injuries in connection with neurosurgical procedures,

13      including unnecessary spinal fusions, and the use of

14      unnecessary instrumentation and medical hardware;

15  5.4.6   In failing to have properly-trained and objective surgeons

16      systematically reviewing and scrutinizing Dr. DREYER'S and

17      Dr. ELSKENS' surgeries performed at Defendant

18      PROVIDENCE prior January 19, 2017, and December 30,

19      2016, respectively, for medical necessity and standard of care

20      or other harm;

21  5.4.7   In failing to have in place proper, effective and consistent

22      quality assurance review processes and procedures that were

23      unbiased and based upon reviews by objective physicians and

24      surgeons trained in peer review, as required by law, and the

25      standard of care for hospitals; and,

26  5.4.8   In deviating below the standard of care for a Hospital by failing

COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE
AND CORPORATE NEGLIGENCE)
Page 17 of 24

1                         to adequately monitor, proctor or control, neurosurgical cases

2                         performed by Dr. DREYER and Dr. ELSKENS to assure their

3                         surgical care was medically necessary and not done for the

4                         purposes of earning excessive profit.

5      5.5    In respect to the above, PROVIDENCE, individually, and by and

6    through the acts and omissions of its agents, representatives, employees and/or

7    ostensible agents, failed to exercise the degree of skill and learning of a reasonably

8    prudent hospital providing medical and neurosurgical care, including through

9    employee or agent neurosurgeons performing in the same or similar circumstances;

10   and, the failure to exercise such skill, care and learning was a proximate cause of

11   the injuries and damages sustained by Plaintiffs, as set forth herein above.

12   PROVIDENCE is directly liable to the named Plaintiffs under the corporate

13   negligence doctrine.

14                             **VI.**
                   **CAUSE OF ACTION FOR NEGLIGENCE**

15             **(Respondeat Superior) for JASON A. DREYER, D.O.**

16   5.6    Plaintiffs re-allege paragraphs 1.1 through 5.5 as though fully set forth

17   herein.

18   5.7    In performing his duties as a neurosurgeon, Dr. DREYER had a duty

19   of care to act with the degree of skill, care, and learning of a reasonably prudent

20   neurosurgeon in the State of Washington performing neurosurgery in the same or

21   similar circumstances at the time of the care or treatment in question.

22   5.8    Dr. DREYER breached his duty of care and was negligent by, without

23   limitation: failing to follow the standard of care for reasonably prudent

24   neurosurgeons performing in the same or similar circumstances during the course

25   and scope of his pre-surgical, surgical, and follow-up care of Plaintiffs TODD

26   BATTEN, ROBERT DYER, and REGGIE MORRIS, as set forth below.

COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE
AND CORPORATE NEGLIGENCE)
Page 18 of 24

1    5.9    Additionally, PROVIDENCE is vicariously liable for the negligence

2  of its employees and agents, including Dr. DREYER, and subject to the doctrine of

3  respondeat superior.  In this regard, PROVIDENCE is liable to Plaintiff TODD

4  BATTEN for the following breaches of the standard of care for cervical spine

5  surgery by its employees or agents (without limitation):

6        5.9.1  In falsely documenting Mr. Batten's symptoms to include arm

7              pain, when he had none, in order to falsely justify doing

8              surgery;

9        5.9.2  In falsely documenting the findings on Mr. Batten's imaging

10              studies to include a "dynamic instability with spondylolisthesis

11              C5-6," and "spondylosis C4-5, C6-7" with "resulting foraminal

12              stenosis at those levels" in order to fraudulently support the

13              unnecessary surgery on his cervical spine;

14        5.9.3  In performing an unnecessary and not medically indicated

15              surgery on Mr. Batten's cervical spine on July 15, 2015;

16        5.9.4  In negligently recommending and using excessive medical

17              device hardware instrumentation on Mr. Batten's spine when

18              such instrumentation was not medically necessary;

19        5.9.5  In performing an unnecessary and not medically indicated

20              surgery on Mr. Batten's cervical spine on April 18, 2018; and

21        5.9.6  In negligently performing these surgeries in order to maximize

22              reimbursement and profit to both Providence and Dr. Dreyer

23              personally.

24    5.10    The breaches in the standard of care by PROVIDENCE employees

25  and/or agents were a proximate cause of the injuries and damages sustained by

26  Plaintiff TODD BATTEN, as set forth herein above.

COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE
AND CORPORATE NEGLIGENCE)
Page 19 of 24

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1    5.11    Additionally, PROVIDENCE is vicariously liable for the negligence

2  of its employees and agents, including Dr. DREYER, and subject to the doctrine of

3  respondeat superior.  In this regard, PROVIDENCE is liable to Plaintiff ROBERT

4  DYER for the following breaches of the standard of care for lumbar spine surgery

5  by its employees or agents (without limitation):

6             5.11.1        In falsely interpreting Mr. Dyer's imaging studies to

7                           justify doing an unnecessary and not medically indicated

8                           surgery on Mr. Dyer's lumbar spine;

9             5.11.2        In negligently recommending and using excessive

10                          medical device hardware instrumentation on Mr. Dyer's

11                          spine when such instrumentation was not medically

12                          necessary;

13            5.11.3        In performing an unnecessary and not medically

14                          indicated surgery on Mr. Dyer's lumbar spine on March

15                          14, 2018; and,

16            5.11.4        In negligently performing these surgeries in order to

17                          maximize reimbursement and profit to both Providence

18                          and Dr. Dreyer personally.

19    5.12    The breaches in the standard of care by PROVIDENCE employees

20  and/or agents were a proximate cause of the injuries and damages sustained by

21  Plaintiff ROBERT DYER, as set forth herein above.

22    5.13    Additionally, PROVIDENCE is vicariously liable for the negligence

23  of its employees and agents, including Dr. DREYER, and subject to the doctrine of

24  respondeat superior.  In this regard, PROVIDENCE is liable to Plaintiff REGGIE

25  MORRIS  for the following breaches of the standard of care for thoracic  spine

26  surgery by its employees or agents (without limitation):

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

| | | |
|---|---|---|
| 1 | 5.13.1 | In falsely asserted preoperative imaging studies showed |
| 2 | | thoracic spondylosis and stenosis at T6-7, and a disc |
| 3 | | bulge and deformation of the spinal cord on the right at |
| 4 | | T6-7; |
| 5 | 5.13.2 | In negligently recommending and using excessive |
| 6 | | medical device hardware instrumentation on Mr. |
| 7 | | Morris's thoracic spine when such instrumentation was |
| 8 | | not medically necessary; |
| 9 | 5.13.3 | In performing an unnecessary and not medically |
| 10 | | indicated surgery on Mr. Morris's thoracic spine on |
| 11 | | January 19, 2017; and, |
| 12 | 5.13.4 | In negligently performing these surgeries in order to |
| 13 | | maximize reimbursement and profit to both Providence |
| 14 | | and Dr. Dreyer personally. |

5.14    The breaches in the standard of care by PROVIDENCE employees and/or agents were a proximate cause of the injuries and damages sustained by Plaintiff REGGIE MORRIS, as set forth herein above.

**VII.**
**CAUSE OF ACTION FOR NEGLIGENCE**
**(Respondeat Superior) for DANIEL P. ELSKENS, M.D.**

6.1    Plaintiffs re-allege paragraphs 1.1 through 5.14 as though fully set forth herein.

6.2    In performing his duties as a neurosurgeon, Dr. ELSKENS had a duty of care to act with the degree of skill, care, and learning of a reasonably prudent neurosurgeon in the State of Washington performing neurosurgery in the same or similar circumstances at the time of the care or treatment in question.

6.3    Dr. ELSKENS breached his duty of care and was negligent by,

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1  without limitation: failing to follow the standard of care for reasonably prudent

2  neurosurgeons performing in the same or similar circumstances during the course

3  and scope of his pre-surgical, surgical, and follow-up care of Plaintiff ANNA

4  TESTER, as follows:

5      6.4    Dr. ELSKENS committed these negligent acts during the scope of his

6  employment with and for Defendant PROVIDENCE and while performing duties

7  as an actual agent of PROVIDENCE.

8      6.5    As a direct and proximate result of Dr. ELSKENS' actions or

9  omissions which constituted negligence, Plaintiff ANNA TESTER suffered

10  injuries and damages in an amount and to an extent to be set forth fully at trial.

11  Defendant PROVIDENCE is now liable to Plaintiff ANNA TESTER for Dr.

12  ELSKENS' breach of the duty of care as set forth herein above.

13      6.6    Additionally, PROVIDENCE is vicariously liable for the negligence

14  of its employees and agents, including Dr. ELSKENS, and subject to the doctrine

15  of respondeat superior.  In this regard, PROVIDENCE is liable to Plaintiff ANNE

16  TESTER for the following breaches of the standard of care for lumbar spine

17  surgery by its employees or agents (without limitation):

18      6.6.1   In negligently recommending and using excessive medical

19             device hardware instrumentation on Ms. Tester's lumbar spine

20             at L2-3, and L3-4 when such instrumentation was not medically

21             necessary;

22      6.6.2   In falsely asserted preoperative imaging studies showed

23             instability and severe stenosis at L2-3, and L3-4, when no such

24             findings existed;

25      6.6.3   In negligently recommending and using excessive medical

26             device hardware instrumentation on Ms. Tester's lumbar spine

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 ● FX: 503-473-8089

1        when such instrumentation was not medically necessary;

2      6.6.4  In performing an unnecessary and not medically indicated

3          surgery on Ms. Tester's lumbar spine on December 30, 2016;

4          and,

5      6.6.5  In negligently performing these surgeries in order to maximize

6          reimbursement and profit to both Providence and Dr. Elskens

7          personally.

8    6.7    The breaches in the standard of care by PROVIDENCE employees

9 and/or agents were a proximate cause of the injuries and damages sustained by

10 Plaintiff ANNE TESTER, as set forth herein above.

## VIII.  ACTING IN CONCERT

12    7.1    Plaintiffs re-allege paragraphs 1.1 through 6.7 as though fully set forth

13 herein.

14    7.2    At all times relevant hereto, the named Defendants, as well as their

15 involved employees or agents, were acting in concert.  As set forth herein above,

16 all acts or omissions of the Defendants, their employees or agents in respect to the

17 negligent care of Plaintiffs TODD BATTEN, ROBERT DYER, REGGIE

18 MORRIS, and ANNA TESTER and related injuries and damages are indivisible.

19 The Defendants are jointly and severally liable for the damages caused by the

20 negligent care of Plaintiffs TODD BATTEN, ROBERT DYER, REGGIE

21 MORRIS, and ANNA TESTER.

## IX. PRAYER FOR RELIEF

23    8.1    Plaintiffs re-allege paragraphs 1.1 through 7.2 as though fully set forth

24 herein.

25    8.2    NOW WHEREFORE, Plaintiffs pray for judgment against the

26 above-named Defendants and in favor of Plaintiffs TODD BATTEN, ROBERT

**Law Office of Robert Beatty-Walters**
3838 SE Franklin Street
Portland, OR 97202-1737
rbw@beattywalterslaw.com
PH: 503-473-8088 • FX: 503-473-8089

1    DYER, REGGIE MORRIS, and ANNA TESTER as follows:

2            8.2.1  For an award of special damages in an amount to be proven at
3                   trial;

4            8.2.2  For an award of general damages in an amount to be proven at
5                   trial;

6            8.2.3  For an award of attorney's fees and costs if available;

7            8.2.4  For an award of statutory, exemplary, or punitive damages if
8                   available;

9            8.2.5  For an award of prejudgment interest;

10           8.2.6  For such other and further relief, as the court deems just and
11                  equitable.

12      8.3    Plaintiffs reserve the right to amend the Complaint pursuant to the
13   Court rules.

14      **Demand for trial by Jury:** Plaintiffs hereby demand that this case be tried
15   to a jury panel of 12 jurors with a number of alternates as agreed by the parties and
16   ordered by the Court.

17      DATED this 10th day of April, 2023.

18
19                           LAW OFFICE OF ROBERT BEATTY-WALTERS
20                           _____
21                           **ROBERT BEATTY-WALTERS**, OSB # 954497
22                           3838 SE Franklin St.
                             Portland, OR 97202-1737
                             PH: (503) 473-8088; FX: (503) 473-8089
23                           rbw@beattywalterslaw.com
                             Attorney for Plaintiff
24

25

26

COMPLAINT FOR DAMAGE (MEDICAL NEGLIGENCE
AND CORPORATE NEGLIGENCE)
Page 24 of 24