FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 30, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TODD BATTEN, an individual;
ROBERT DYER, an individual;
REGGIE MORRIS, an individual; and
ANNA TESTER, an individual,

                Plaintiffs,

     v.

PROVIDENCE ST. JOSEPH
HEALTH; PROVIDENCE HEALTH
& SERVICES; PROVIDENCE
HEALTH AND SERVICES –
WASHINGTON d/b/a PROVIDENCE;
PROVIDENCE ST. MARY
MEDICAL CENTER; and
PROVIDENCE MEDICAL GROUP
d/b/a PROVIDENCE MEDICAL
GROUP SOUTHEAST
WASHINGTON NEUROSURGERY,
a/k/a PMG NEUROSCIENCE
INSTITUTE, WALLA WALLA a/k/a
NEUROSCIENCE INSTITUTE d/b/a
PROVIDENCE,

                Defendants.

CASE NO: 2:23-CV-0097-TOR

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 1

1    BEFORE THE COURT are Defendants' Motion for Summary Judgment

2 (ECF No. 50) and Plaintiffs' Motion to Enforce Court Order and Compel

3 Production (ECF No. 87) and Motion to Expedite (ECF No. 89).  These matters

4 were submitted for consideration without oral argument.  The Court has reviewed

5 the record and files herein and is fully informed.  For the reasons discussed below,

6 Defendants' Motion for Summary Judgment (ECF No. 50) is **GRANTED**, and

7 Motion to Enforce Court Order and Compel Production (ECF No. 87) and Motion

8 to Expedite (ECF No. 89) are **DENIED as moot**.

9                                **BACKGROUND**

10    This case arises out of allegedly negligent back surgeries performed by

11 former neurosurgeons, Jason A. Dreyer, D.O. ("Dr. Dreyer"), and Daniel P.

12 Elskens, M.D. ("Dr. Elskens"), while working as agents and employees of

13 Defendants in Washington State.  ECF No. 1 at ¶ 1.1.  Between 2015 and 2018,

14 each named Plaintiff underwent back surgery performed by either Dr. Dreyer or

15 Dr. Elskens that Plaintiffs allege were not medically necessary and resulted in

16 permanent injury.  *Id.* at ¶¶ 4.2.2.,4.3.4,4.4.4,4.5.4.  Dr. Dreyer and Dr. Elskens

17 have since resigned from their positions.  *Id.* at ¶¶ 1.9,1.11.

18    Between April 12, 2022, and May 21, 2022, Plaintiffs Todd Batten, Robert

19 Dyer, and Anna Tester learned of a settlement between the United States

20 Department of Justice ("DOJ") and Providence within the Eastern District of

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 2

1  Washington involving claims that Dr. Dreyer and Dr. Elskens had been permitted

2  by Providence to perform unnecessary surgeries on patients.  *Id.* at ¶¶

3  4.2.6,4.3.5,4.5.5.  In or about April of 2021, Plaintiff Reggie Morris learned

4  through a news report of a different case concerning Providence and Dr. Dreyer's

5  alleged fraud in performing unnecessary surgeries.  *Id.* at ¶ 4.4.7.  All Plaintiffs

6  assert they were not aware their respective surgeries may have been unnecessary or

7  negligently performed until learning of these other allegations against Providence,

8  Dr. Dreyer and Dr. Elskens.

9  On April 10, 2023, Plaintiffs filed their Complaint against Defendants

10  asserting Washington State law claims of corporate negligence and vicarious

11  liability for the medical negligence of Dr. Dreyer and Dr. Elskens.  ECF No. 1.

12  Plaintiffs also assert Defendants are jointly and severally liable for the damages

13  caused by the negligent care of Plaintiffs under an "acting in concert" theory.  *Id.*

14  at ¶ 7.2.

15  **DISCUSSION**

16  Defendants move for summary judgment on all claims arguing they are time

17  barred under Washington's statute of limitations, RCW § 4.16.350.  ECF No. 50.

18  **I.    Motion for Summary Judgment**

19  Summary judgment may be granted to a moving party who demonstrates

20  "that there is no genuine dispute as to any material fact and the movant is entitled

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 3

1    to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the

2    initial burden of demonstrating the absence of any genuine issues of material fact.

3    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the

4    non-moving party to identify specific facts showing there is a genuine issue of

5    material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

6    "The mere existence of a scintilla of evidence in support of the plaintiff's position

7    will be insufficient; there must be evidence on which the [trier-of-fact] could

8    reasonably find for the plaintiff."  *Id*. at 252.

9        For purposes of summary judgment, a fact is "material" if it might affect the

10   outcome of the suit under the governing law.  *Id*. at 248.  A dispute concerning any

11   such fact is "genuine" only where the evidence is such that the trier-of-fact could

12   find in favor of the non-moving party.  *Id*.  "[A] party opposing a properly

13   supported motion for summary judgment may not rest upon the mere allegations or

14   denials of his pleading but must set forth specific facts showing that there is a

15   genuine issue for trial."  *Id*. (internal quotation marks omitted); *see also First Nat'l*

16   *Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 288-89 (1968) (holding that a party

17   is only entitled to proceed to trial if it presents sufficient, probative evidence

18   supporting the claimed factual dispute, rather than resting on mere allegations).  In

19   ruling upon a summary judgment motion, a court must construe the facts, as well

20   as all rational inferences therefrom, in the light most favorable to the non-moving

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 4

1  party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would

2  be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d

3  764, 773 (9th Cir. 2002).

4  **II.     Analysis**

5  Defendants contend all of Plaintiffs' claims are time barred under

6  Washington's statute of limitations for medical negligence claims.  ECF No. 50 at

7  4.  Pursuant to RCW § 4.16.350(3), medical negligence claims

8  shall be commenced within three years of the act or omission alleged
to have caused the injury or condition, or one year of the time the patient
9  or his or her representative discovered or reasonably should have
discovered that the injury or condition was caused by said act or
10  omission, whichever period expires later, except that in no event shall
an action be commenced more than eight years after said act or
11  omission.

12  Plaintiffs do not dispute that their medical negligence claims were not filed within

13  three years of their respective surgeries.  ECF No. 65 at 3.  Rather, Plaintiffs assert

14  the latter limitation period of one year, otherwise known as the discovery rule,

15  applies in this case.

16  "The discovery rule operates to toll the date of accrual until the plaintiff

17  knows or, through the exercise of due diligence, should have known all the facts

18  necessary to establish a legal claim." *Giraud v. Quincy Farm & Chem.*, 102 Wash.

19  App. 443, 449 (2000).  "The action accrues when the plaintiff knows or should

20  know the relevant facts, whether or not the plaintiff also knows that these facts are

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 5

1    enough to establish a legal cause of action."  Allen v. State, 118 Wn.2d 753, 758,

2    826 P.2d 200 (1992).  Where a plaintiff invokes the discovery rule to counter a

3    statute of limitations defense, the burden lays with the plaintiff to demonstrate the

4    relevant facts were not discovered or could not have been discovered earlier with

5    due diligence.  *G.W. Const. Corp. v. Pro. Serv. Indus., Inc.*, 70 Wash. App. 360,

6    367 (1993).  "Unless the facts are susceptible of only one reasonable interpretation,

7    it is up to the jury to determine whether the plaintiff has met his burden."  *Giraud*,

8    102 Wash. App. at 451.

9        Defendants argue the discovery rule does not apply in this case because

10   Plaintiffs had knowledge of their injuries and concerns within the three-year statute

11   of limitations.  ECF No. 50 at 7.  Plaintiffs counter that the worsening pain and

12   complications arising after the surgeries did not provide notice that the procedures

13   were possibly unnecessary because the surgeons had warned of such risks and side

14   effects prior to operating.  ECF No. 65 at 7-8.  Plaintiffs argue complications from

15   surgery can still arise in the absence of negligence, thus the negligence in this case

16   was exposing Plaintiffs to the unnecessary risks of complications by performing

17   unnecessary surgeries.  *Id.* at 8.  Therefore, Plaintiffs assert the discovery rule is

18   applicable because they were not made aware that their surgical procedures were

19   possibly unnecessary until learning of the settlement between Providence and the

20   DOJ, or in the case of Plaintiff Reggie Morris, hearing on the news of another case

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 6

1    alleging Defendants' fraud related to unnecessary surgeries.  ECF No. 65 at 7-8.

2    Defendants reply that the complications and issues Plaintiffs complained of

3    after their surgeries triggered their duty to inquire, and such inquiry would have led

4    Plaintiffs to discover the facts underlying their claims that the surgeries were

5    unnecessary or negligently performed.  ECF No. 80 at 4.  Defendants argue that

6    Plaintiffs' knowledge of the broader allegations underlying the DOJ's investigation

7    was not needed to learn the essential facts of their claims.  *Id.*  After reviewing the

8    relevant law and alleged facts of this case, the Court agrees with Defendants.

9    Each Plaintiff complained of complications and worsening pain after their

10   respective surgeries.  And even though Plaintiffs were told such complications

11   were possible risks of surgery, Washington law still requires a plaintiff to exercise

12   due diligence where the injury and cause of that injury are known.  Plaintiffs'

13   argument that they did not learn of a possible breach of duty until years later did

14   not excuse this due diligence requirement.  *Zaleck v. Everett Clinic*, 60 Wn. App.

15   107, 113 (1991) ("The 1-year post-discovery period can be invoked only when the

16   plaintiff has exercised due diligence; it will not be invoked when the plaintiff has

17   had ready access to information that a wrong has occurred."); *Reichelt v. Johns-*

18   *Manville Corp.*, 107 Wash. 2d 761, 772 (1987); *Gevaart v. Metco Construction,*

19   *Inc.*, 111 Wn.2d 499, 760 (1988).

20   *Reichelt* and *Gevaart* are particularly instructive here.  In *Reichelt*, the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 7

1  plaintiff brought a claim of negligence based on his exposure to asbestos while

2  working as an asbestos worker, and the issue became whether his claim was time

3  barred under the statute of limitations. *Reichelt*, 107 Wash. 2d at 763.  The

4  Washington Supreme Court rejected the plaintiff's argument that his claim was

5  timely because he did not become aware of the defendant's breach of duty until

6  less than a year prior to bringing suit.

7  
8  
9  
> Mr. Reichelt would have us adopt a rule that would in effect toll the statute of limitations until a party walks into a lawyer's office and is specifically advised that he or she has a legal cause of action; that is not the law. A party must exercise reasonable diligence in pursuing a legal claim. If such diligence is not exercised in a timely manner, the cause of action will be barred by the statute of limitations.

10  

11  *Id.* at 772.

12       In *Gevaart*, the plaintiff was injured after stepping on a sloped step causing

13  her to tumble backwards.  *Gevaart*, 111 Wn.2d at 500.  The plaintiff reasoned that

14  even though she knew the step was sloped and caused her injury, she was not

15  aware that the slope existed because the builder breached a duty toward her but

16  rather assumed the slope was for drainage.  *Id.* at 501-02.  She therefore argued

17  that the limitation statute had not begun to run until she learned of the breach much

18  later.  *Id.*

19       The Washington Supreme Court again rejected this argument as contrary to

20  Washington law.  "[T]he discovery rule does not require knowledge of the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 8

1    existence of a legal cause of action.  To so require would effectively do away with

2    the limitation of actions until an injured person saw his/her attorney." *Id.* at 502

3    (internal citations omitted).  Rather, the court found the statute of limitations clock

4    began to run on the day she was injured because she knew the step was sloped and

5    "[b]y the exercise of due diligence she could have determined that the step did not

6    conform to the building code and further, the true reason why the slope existed."

7    *Id.*

8        Washington courts require the same due diligence by plaintiffs in the

9    medical malpractice context.  *See Zaleck*, 60 Wash. App. at 114; *Lo v. Honda*

10   *Motor Co.*, 73 Wn. App. 448, 464 (1994); *Cox v. Oasis Physical Therapy, PLLC*,

11   153 Wash. App. 176, 191 (2009).  The discovery rule is not invoked "when the

12   plaintiff had ready access to information that a wrong occurred."  *Gevaart*, 111

13   Wn.2d at 502.  Thus, when a plaintiff is aware of an injury and the cause of that

14   injury, the duty to inquire arises.  Only by a plaintiff demonstrating that the

15   essential facts underlying the cause of action could not have been discovered with

16   due diligence within those three years after the act or omission has occurred, will

17   the discovery rule apply.  *Zaleck*, 60 Wash. App. at 113.  *See also Winbun v.*

18   *Moore*, 143 Wn.2d 206 (2001) (upholding jury verdict finding plaintiff could not

19   have discovered relevant facts with due diligence where omission of medical

20   records obscured the nature and extent of plaintiff's care); *Lo v. Honda Motor Co.*,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 9

73 Wash. App. 448 (1994) (finding due diligence a question of fact for the jury where a defective product presented as another facially logical explanation for plaintiff's injuries rather than medical malpractice).

A review of each of the individual claims in this case demonstrates a lack of due diligence where such a duty existed.

### a. Plaintiff Todd Batten

Dr. Dreyer performed cervical surgery on Mr. Batten on July 15, 2015. ECF No. 68 at 2. Mr. Batten states that prior to the surgery, Dr. Dreyer told him surgery was necessary and had to performed straight away. ECF No. 68 at 2. As a result of the surgery, Mr. Batten suffered from adjacent segment disease in his cervical spine and had increased pain and loss of range of motion. ECF No. 1 at ¶ 4.2.2. Dr. Dreyer then allegedly told Mr. Batten that a second surgery was urgently needed because the first had failed to fix all the cervical area. ECF No. 68 at 2. Dr. Dreyer performed the second cervical surgery on Mr. Batten on April 18, 2018. ECF No. 66 at 2.

On June 27, 2018, Mr. Batten requested an earlier follow up appointment with Dr. Dreyer's office due to progressing pain in his neck and shoulders after the second surgery. ECF No. 52 at 2. He also reported that he was needing to take an opioid pain medication for relief even though he had not previously needed it immediately after the surgery. *Id.* At an appointment the next day, Mr. Batten

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

1  reported he was experiencing more cervical pain than he had preoperatively, and

2  the pain had progressed since he had previously been seen at his one-month post-

3  operation checkup.  ECF No. 52 at 1.  He states he was not seen by Dr. Dreyer at

4  that appointment and was told he was out of the office.  ECF No. 68 at 2.

5      For the rest of 2018, Mr. Batten was not seen by Dr. Dreyer at any of his

6  follow-up appointments.  *Id.* at 2-3.  In early 2019, Mr. Batten learned from a letter

7  posted in his online medical chart that Dr. Dreyer had resigned from Providence.

8  *Id.* at 3.  On April 23, 2019, Mr. Batten's spouse called Providence to report Mr.

9  Batten continued to have pain and asked if Dr. Dreyer was let go for doing

10  unnecessary surgeries.  ECF No. 81 at 8.  She was informed by a medical assistant

11  that it was Dr. Dreyer's choice to resign.  *Id.*

12      Plaintiffs argue the facts presented do not show that Mr. Batten should have

13  been aware that the cause of his symptoms were from unnecessary surgeries.  ECF

14  No. 65 at 9.  However, the surgeries themselves were the cause of Mr. Batten's

15  symptoms.  Whether he knew they were unnecessary, and thus negligently

16  performed, was not required to invoke the discovery rule.  "The key consideration

17  under the discovery rule is the factual, as opposed to the legal, basis of the cause of

18  action."  *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.,* 123 Wash.2d 15, 35,

19  864 P.2d 921 (1993).  Mr. Batten's worsening pain after the second surgery,

20  particularly in light of Dr. Dreyer allegedly informing Mr. Batten the second

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 11

1  surgery was needed to address issues missed in the first surgery, would have

2  alerted a reasonable person to the possibility that the surgery was negligently

3  performed.

4       Mr. Batten's spouse's phone call even demonstrates their suspicion that Dr.

5  Dreyer was performing unnecessary surgeries.  However, even if Mr. Batten was

6  not aware the surgeries were unnecessary at that time, the facts constituting a

7  negligence claim could have been discovered through due diligence, such as

8  getting a second opinion of his initial MRI scans after he first reported worsening

9  symptoms on June 27, 2018, or at the latest after his spouse's phone call on April

10  23, 2019.  Mr. Batten has not demonstrated he was due diligent or due diligence

11  would not have discovered the essential facts underlying his claim.  *Clare v.*

12  *Saberhagen Holdings, Inc.*, 129 Wash. App. 599, 603 (2005) ("The plaintiff bears

13  the burden of proving that the facts constituting the claim were not and could not

14  have been discovered by due diligence within the applicable limitations period.").

15  Mr. Batten learning of the DOJ settlement with Providence did not provide him

16  knowledge of a fact essential to his claim that he could not have otherwise known

17  through due diligence earlier, it simply alerted him to the existence of a possible

18  legal cause of action.

19       The Court finds Mr. Batten failed to demonstrate due diligence when he

20  knew the critical facts underlying his cause of action within the applicable time

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 12

1    period.  Therefore, the discovery rule does not apply, and Mr. Batten's claims are

2    untimely pursuant to RCW § 4.16.350(3).  *See Zaleck v. Everett Clinic*, 60 Wn.

3    App. at 113.

4    **b.  Plaintiff Robert Dyer**

5        Dr. Dreyer performed lumbar surgery on Mr. Dyer on March 13, 2018.  ECF

6    No. 66 at 4.  Mr. Dyer states that prior to the surgery, Dr. Dreyer told him that he

7    was at risk of becoming paralyzed and needed extensive surgery as soon as

8    possible.  ECF No. 69 at 2.

9        On June 26, 2018, Mr. Dyer reported that he did not believe the healing

10    process was progressing as it should and that he continued to have muscle ache

11    with weakness in his lower back.  ECF No. 52 at 5.  He was not seen by Dr. Dreyer

12    but was referred for physical therapy.  *Id.*

13        On January 25, 2019, Mr. Dyer reported persistent pain and symptoms

14    effecting his quality of life.  *Id.* at 4.  He reported stabbing pain across his right

15    lower back where the surgery was performed.  He also stated his legs were still

16    weaker prior to the surgery and he had growing numbness in his feet.  *Id.*  Finally,

17    he stated he was experiencing urinary issues and had to wear urinary incontinence

18    pads.  Mr. Dyer also learned at that time Dr. Dreyer had resigned from his position.

19    *Id.*

20        On June 13, 2019, Mr. Dyer complained of continued back and lower

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 13

1  extremity symptoms that began after his surgery.  ECF No. 52 at 3.  He also

2  reported that the pain was greater than it was prior to surgery.  He described the

3  pain as "crushing, sharp, shooting, stabbing and throbbing."  *Id.*  Mr. Dyer also

4  reported that his persistent leg symptoms improved with nothing.  *Id.*

5       Plaintiffs argue these facts do not show Mr. Dyer should have known his

6  symptoms were caused by unnecessary surgery and further argues that Dr. Dreyer

7  warned Mr. Dyer prior to the operation that additional injury could result.  ECF

8  No. 65 at 10.  However, Mr. Dyer did have knowledge that his continuous and

9  worsening symptoms resulted from the surgery Dr. Dreyer performed on him.  He

10  also expressed concern with the progression of his healing soon after surgery.

11  "Generally, if the plaintiff is aware of some injury, the statute of limitation begins

12  to run even if he does not know the full extent of his injuries."  *Steele v. Organon,*

13  *Inc.*, 43 Wn. App. 230, 234 (1986).  Furthermore, even if Mr. Dyer did not have

14  reasonable suspicion of the facts underlying his cause of action, he has not

15  demonstrated that, with due diligence, he could not have known about his cause of

16  action until learning about the DOJ settlement with Providence.  Like Mr. Batten,

17  Mr. Dyer could have gotten a second opinion on whether his initial MRI scans

18  indicated a need for surgery.  Therefore, the discovery rule is inapplicable as a

19  matter of law and Mr. Dyer's claims are similarly untimely.

20  //

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 14

1    **c. Plaintiff Reggie Morris**

2       Dr. Dreyer performed two surgeries on Mr. Morris: a cervical spine surgery

3    on January 28, 2016, and thoracic spine surgery on January 19, 2017.  ECF No. 66

4    at 5.  Mr. Morris states that prior to these surgeries, Dr. Dreyer told him each was

5    necessary and had to be performed in the near future.  ECF No. 70 at 2.

6       After the thoracic surgery, Mr. Morris states he returned to Providence

7    multiple times with complaints of increased pain and other symptoms.  *Id.*  He

8    claims he was told by many Providence employees that it would take time for him

9    to recover from his surgery.  *Id.*  On December 12, 2017, Mr. Morris received

10   steroid injections to address muscle spasms in his back that had been ongoing since

11   his thoracic surgery.  ECF No. 52 at 10-11.  Several months later, he requested

12   repeat injections to again alleviate his back symptoms.  *Id.* at 9.  Mr. Morris states

13   that he repeatedly requested to meet with Dr. Dreyer for a follow-up appointment

14   but was told Dr. Dreyer was out of the office and no one knew when he would

15   return.  ECF No. 70 at 2-3.

16      In June 2018, Mr. Morris reported that fluid was draining from his incision

17   area.  *Id.* at 7.  The drainage was treated as an infection however a culture of the

18   fluid indicated it was likely not an infection.  ECF No. 52 at 7.  Because Dr. Dreyer

19   was still out of the office, Mr. Morris was referred to an infection and neurosurgery

20   specialist at another Providence location.  ECF No. 70 at 3.  On November 11,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 15

1    2018, a different neurosurgeon with Providence performed thoracic surgery on Mr.

2    Morris to remove most of the hardware installed by Dr. Dreyer.  *Id.*  Mr. Morris

3    continued to see healthcare providers for his back issues in 2018, 2019, and 2020.

4    *Id.*

5            Plaintiffs again assert Mr. Morris did not have the factual basis to discover

6    the surgeries performed by Dr. Dreyer were unnecessary prior to learning of

7    Providence and Dr. Dreyer's alleged fraud on the news in April of 2021.  ECF No.

8    65 at 11.  The Court again disagrees for the same reasons previously discussed.  Of

9    particular significance in Mr. Morris's case is that he obtained corrective surgery to

10   remove most of the hardware installed by Dr. Dreyer.  Thus, even if Mr. Morris

11   being told by Providence employees that he needed to give his back "time to

12   recover" and Mr. Morris's own assertion that he was told by a physician's assistant

13   that his thoracic surgery was not the cause of his symptoms would not have

14   triggered a reasonable person to further investigate for possible negligence, the

15   corrective surgery certainly would have.  Thus, Mr. Morris has not demonstrated

16   that the essential elements of his claim could not have been discovered even with

17   due diligence after November 11, 2018.  Therefore, the discovery rule is

18

19

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 16

1  inapplicable, and Mr. Morris's claims are untimely.[1]

2  **d. Plaintiff Anna Tester**

3  In Ms. Tester's declaration, she states that on November 29, 2016, Dr.

4  Elskens told her she needed urgent low back surgery.  ECF No. 71 at 2.  Dr.

5  Elskens subsequently performed lumbar surgery on Ms. Tester December 30,

6  2016.  ECF No. 53 at 5.  After surgery, Ms. Tester states she expressed concern

7  with Dr. Elskens and other Providence employees about low back pain, muscle

8  spasms, new numbness and tingling in her right leg and foot.  ECF No. 71 at 2.

9  She states she was told by Dr. Elskens and the other Providence employees that the

10  tingling and numbness was to be expected and would get better over time.  *Id.*  At

11  the three-month follow up appointment, Ms. Tester again expressed concern with

12

13  [1]    After Mr. Morris became aware of the claims against Providence and Dr.

14  Dreyer in April of 2021, a Good Faith Request for Mediation under RCW 7.70.110

15  was served on defendants February 22, 2022, which normally extends the statute of

16  limitations for a claim by one year.  ECF No. 66 at 7; RCW 7.70.110.  The parties

17  subsequently entered into a tolling agreement on January 22, 2022, extending the

18  statute of limitations for Mr. Morris until May 22, 2023.  ECF No. 66 at 7.

19  However, Mr. Morris's claim expired well before February 22, 2022, and Plaintiffs

20  have not provided that tolling agreement in their exhibits.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17

1  the numbness and tingling in her right leg and foot but was again reassured by Dr.

2  Elskens that the symptoms would get better over time.  *Id.*  After this appointment,

3  Dr. Elskens left Providence.  *Id.* at 3.  Ms. Tester reported to a different Providence

4  facility in 2018 and 2019 for neurosurgery follow-up consultation and pain

5  management related to her lumbar surgery.  *Id.*  She reported continued numbness

6  in her right calf and foot.  *Id.*

7       Plaintiffs again argue that these facts do not show that Ms. Tester should

8  have known that her symptoms were caused from an unnecessary surgery.  ECF

9  No. 65 at 12.  Plaintiffs also point to Elsken's pre-operative notes in Ms. Tester's

10  chart stating, "it is realistic to anticipate that some symptoms will continue

11  postoperatively despite a successful surgery" and that some may even worsen.

12  ECF No. 67-20.

13       As the Court previously explained, Ms. Tester's knowledge that her surgery

14  may have been unnecessary is not required to invoke the discovery rule where

15  prior due diligence could have alerted Ms. Tester to the essential elements of her

16  claim.  Ms. Tester repeatedly reported the numbness and tingling in her leg as new

17  symptoms post-operation and was told by Dr. Elskens on two separate occasions

18  that the symptoms would improve over time.  ECF No. 71 at 2.  The lack of

19  improvement over the following three years should have put Ms. Tester on notice

20  of possible negligence.  Ms. Tester's subjective belief that she had no reason to

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 18

1    suspect her surgery was unnecessary or negligently performed until 2022 did not

2    excuse her duty to exercise due diligence where a reasonable person would have

3    doubted the doctor's assurances long prior. *Id.* at 3-5.  Because Ms. Tester was not

4    diligent, the discovery rule is inapplicable as a matter of law and her claim is also

5    untimely.

6    **CONCLUSION**

7         For the foregoing reasons, the Court finds Plaintiffs have failed to raise an

8    issue of material fact that the discovery rule applies to their claims of medical

9    negligence thereby tolling the statute of limitations.  Plaintiffs' claims are time-

10    barred and therefore must be dismissed.  Additionally, as Plaintiffs' corporate

11    negligence claims are based on the injuries Plaintiffs suffered from negligent

12    health care, the statute of limitations set forth in RCW 4.16.350 also applied to

13    those claims.

14    //

15    //

16    //

17    //

18    //

19    //

20    //

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 19

1    **ACCORDINGLY, IT IS HEREBY ORDERED:**

2         1.  Defendants' Motion for Summary Judgment (ECF No. 50) is

3             **GRANTED**.

4         2.  Plaintiffs' Motion to Enforce Court Order and Compel Production (ECF

5             No. 87) and Motion to Expedite (ECF No. 89) are **DENIED as moot**.

6         3.  The deadlines, hearings and trial date are **VACATED**.

7         The District Court Executive is directed to enter this Order, enter Judgment,

8    furnish copies to counsel and **CLOSE** the file.

9         DATED June 30, 2025.



11                                    THOMAS O. RICE
                                      United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 20